Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIYUSH VIRADIA,<br><br>               Plaintiff,<br><br>      vs.<br><br>HERSHA HOSPITALITY TRUST, HASU P. SHAH, JAY H. SHAH, NEIL H. SHAH, DONALD J. LANDRY, JACKSON HSIEH, THOMAS J. HUTCHISON III, MICHAEL A. LEVEN, DIANNA F. MORGAN, and JOHN M. SABIN,<br><br>               Defendants. | Case No.:  1:23-cv-8820<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Piyush Viradia ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.     Plaintiff brings this stockholder action Hersha Hospitality Trust ("Hersha" or the "Company") and the Company's Board of Trustees (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company and Hersha Hospitality Limited Partnership to 1776 Portfolio Investment, LLC ("Parent") through merger vehicles 1776 Portfolio REIT Merger Sub, LLC and 1776 Portfolio OP Merger Sub, LP  ("Merger Subs," collectively with Parent, "Parent Parties") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").  The Parent Parties are affiliates of KSL Capital Partners, LLC ("KSL" or "Ultimate Parent").

2.     The terms of the Proposed Transaction were memorialized in an August 28, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent Parties will acquire all of the remaining outstanding shares of Hersha's common stock at a price of $10.00 per share in cash.  Additionally, holders of Hersha's 6.875% Series C Cumulative Redeemable Preferred Shares, 6.50% Series D Cumulative Redeemable Preferred Shares, and 6.50% Series E Cumulative Redeemable Preferred Shares will receive $25.00 in cash, plus any accrued and unpaid dividends to which they are entitled, for each preferred share they own.  As a result, Hersha will become an indirect wholly owned subsidiary of Parent Parties.

3.     Thereafter, on September 22, 2023, Hersha filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction and a Definitive Proxy Statement on October 3, 2023 (together, the "Proxy Statement").

4.     The Proposed Transaction is unfair for several reasons.  Significantly, the Proxy Statement fails to disclose what powers the Transaction Committee had in reviewing the Proposed Transaction, including whether the Committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Proxy Statement depriving Plaintiff of the proper information necessary to decide whether to vote in favor of the Proposed Transaction.  The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Hersha, provided by Hersha management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Goldman Sachs, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## **PARTIES**

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Hersha stockholder.

8.      Defendant Hersha is a self-advised real estate investment trust in the hospitality sector, which owns and operates luxury and lifestyle hotels in coastal gateway and resort markets, including New York, Washington, DC, Boston, Philadelphia, South Florida, and California. Hersha is incorporated under the laws of the State of Maryland and has its principal place of business at 44 Hersha Drive, Harrisburg, Pennsylvania, 17102.  Shares of Hersha common stock are traded on the New York Stock Exchange under the symbol "HT".

9.     Defendant Hasu P. Shah ("Hasu Shah") has been a Director of the Company at all relevant times and is the Chairman Emeritus of the Company Board.

10.     Jay H. Shah ("Jay Shah") has been a director of the Company at all relevant times and serves as the Chairman of the Company Board.

11.     Defendant Neil H. Shah ("Neil Shah") has been a director of the Company at all relevant times and serves as Company's President and Chief Executive Officer ("CEO").

12.     Defendant Donald J. Landry ("Landry") has been a director of the Company at all relevant times.

13.     Defendant Jackson Hsieh ("Hsieh") has been a director of the Company at all relevant times.

14.     Defendant Thomas J. Hutchison III ("Hutchison") has been a director of the Company at all relevant times.

15.     Defendant Michael A. Leven ("Leven") has been a director of the Company at all relevant times.

16.     Defendant Dianna F. Morgan ("Morgan") has been a director of the Company at all relevant times.

17.     Defendant John M. Sabin ("Sabin") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party 1776 Portfolio Investment, LLC is a Delaware limited liability company that was formed to enter into the Merger Agreement

20.     Non-Party Merger Subs are wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction.

21.     Non-Party KSL Capital Partners, LLC is a private equity firm specializing in travel and leisure enterprises in five primary sectors: hospitality, recreation, clubs, real estate and travel services.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or trustees, have extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25.     Hersha is a self-advised real estate investment trust in the hospitality sector, which owns and operates luxury and lifestyle hotels in coastal gateway and resort markets, including New York, Washington, DC, Boston, Philadelphia, South Florida, and California. Hersha is incorporated under the laws of the state of Maryland and has its principal place of business at 44 Hersha Drive, Harrisburg, Pennsylvania, 17102.

26.     The Company's recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the report of second quarter 2023 financial results, the Company highlighted such milestones as net income of $1.7 million or $0.04 per share, adjusted funds from operations of $0.38 per share, and comparable portfolio RevPAR growth of 3.6% to the Second Quarter of 2022.

27.     Speaking on these positive results, CEO and defendant Neil H. Shah commented on the Company's positive results as follows, "We were pleased to see the strong recovery in our core urban markets during the quarter that allowed us to achieve double digit RevPAR growth for this segment of our overall portfolio. Outperformance in our New York, Boston and Washington DC markets allowed us to offset some of the retracement in domestic leisure travel seen in our resort markets and the wider lodging industry. Despite this normalization at our resort properties, we are significantly outperforming pre-Covid levels and view this year as a new base for growth moving forward. In July, our resort RevPAR further stabilized, while our urban markets continued to outperform and exceeded prior year performance by 12%. We are confident that the stabilizing

operating environment in our resorts, coupled with the ongoing dynamics in our urban markets will drive outsized growth in our portfolio."

28.     Defendant Shah continued, "At present, there are a wide array of viewpoints as to how the economy will unfold in the second half of 2023 and how those macro-economic factors will impact lodging. However, US GDP growth along with fundamental on the ground hotel performance remains resilient. Our outlook for the ongoing travel recovery and long-term lodging fundamentals remains positive, driven by the return of corporate and international travel as well as a very benign supply outlook that will continue to serve as a significant tailwind for the foreseeable future."

29.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Hersha.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Hersha to enter into the Proposed Transaction without providing requisite information to Hersha stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Notably, the Proxy Statement fails to disclose what powers the Transaction Committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. This is especially important

since the Transaction Committee was chaired by Tom Hutchison, who had conflict of interest with KSL.

33.     Furthermore, the Proxy Statement fails to provide adequate rationale for the acceptance of KSL's offer for a lower per share price than Party A's offer.  The Proxy Statement claims that Party A needed an additional month to arrange financing, but fails to adequately explain why an additional month was too long to wait for a higher offer that would have provided more benefit to shareholders like Plaintiff.

34.     Additionally, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent Parties, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner and that a deficient Proxy Statement was issued.

***The Proposed Transaction***

36.     On August 28, 2023, Hersha and KSL issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> PHILADELPHIA, PENNSYLVANIA and DENVER, COLORADO, AUGUST 28, 2023 – Hersha Hospitality Trust (NYSE: HT) ("Hersha" or the "Company"), owner of luxury and lifestyle hotels in coastal gateway and resort markets, and KSL Capital Partners, LLC ("KSL"), a leading investor in travel and leisure businesses, today announced a definitive merger agreement, entered into on August 27, 2023, under which affiliates of KSL will acquire all of the outstanding common shares of Hersha for $10.00 per share in an all-cash transaction valued at approximately $1.4 billion. The purchase price represents a premium of approximately 60% over Hersha's closing share price on August 25, 2023, the last full trading day prior to this announcement.

Mr. Jay H. Shah, Hersha's Executive Chairman, stated: "This transaction provides our shareholders with immediate and certain value at a substantial premium to our public valuation. Following a multi-year comprehensive review by the independent Transaction Committee of Hersha's Board of Trustees, the Board and management team are confident this step will allow us to deliver value for our shareholders while refocusing on growing the business over a longer period of time."

Mr. Neil H. Shah, Hersha's Chief Executive Officer, added: "We are proud of the work our team has done to build on Hersha's culture and capabilities and make the company what it is today. This transaction is a result of our deliberate actions to focus on key gateway markets and lifestyle and leisure properties, as well as our work to create a concentrated portfolio consisting of some of the highest quality hotels in their respective markets."

Mr. Marty Newburger, Partner at KSL, stated: "Hersha and its team have built an impressive, curated portfolio of experiential luxury and lifestyle hotels and resorts in strategic markets. With KSL's extensive track record investing in high-quality assets in dynamic metropolitan markets across North America and around the world, we are uniquely suited to position the business for further success over the long term."

**Transaction Details**

Under the terms of the merger agreement, which has been unanimously recommended by the independent Transaction Committee of Hersha's Board of Trustees and unanimously approved by Hersha's full Board of Trustees, Hersha shareholders will receive $10.00 in cash for each common share they own, and holders of Hersha's 6.875% Series C Cumulative Redeemable Preferred Shares, 6.50% Series D Cumulative Redeemable Preferred Shares and 6.50% Series E Cumulative Redeemable Preferred Shares will receive $25.00 in cash, plus any accrued and unpaid dividends to which they are entitled, for each preferred share they own. The transaction is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including approval by the holders of a majority of Hersha's outstanding common shares as set forth in the merger agreement. Certain members of Hersha's executive management team and certain of their affiliated trusts have signed separate voting agreements under which they agreed to vote certain Hersha shares controlled by each of them in support of the proposed transaction. Subject to and upon completion of the transaction, Hersha's common shares and preferred shares will no longer be listed on any public securities exchange.

**Advisors**

Goldman Sachs & Co. LLC is serving as exclusive financial advisor and Latham and Watkins LLP and Venable LLP are serving as legal advisors to the Transaction Committee of Hersha's Board of Trustees. Hunton Andrews Kurth LLP is serving as legal advisor to Hersha. Wells Fargo and Citigroup are serving as financial advisors and Simpson Thacher & Bartlett LLP and Miles and Stockbridge P.C. are serving as legal advisors to KSL. Additionally, Wells Fargo and Citigroup provided a debt financing commitment to KSL in connection with the transaction.

**About Hersha Hospitality Trust**

Hersha Hospitality Trust (HT) is a self-advised real estate investment trust in the hospitality sector, which owns and operates luxury and lifestyle hotels in coastal gateway and resort markets. The Company's 25 hotels totaling 3,811 rooms are located in New York, Washington, DC, Boston, Philadelphia, South Florida, and California. The Company's common shares are traded on The New York Stock Exchange under the ticker "HT." For more information on the Company, and the Company's hotel portfolio, please visit the Company's website at www.hersha.com.

**About KSL Capital Partners**

KSL Capital Partners is a private equity firm specializing in travel and leisure enterprises in five primary sectors: hospitality, recreation, clubs, real estate and travel services. KSL has offices in Denver, Colorado; New York City; Stamford, Connecticut; and London, England. Since 2005, KSL has raised in excess of $21 billion of capital across its equity, credit and tactical opportunities funds. KSL's current and past portfolio contains some of the premier properties in travel and leisure. For more information, please visit www.kslcapital.com.

*Potential Conflicts of Interest*

37.     The breakdown of the benefits of the deal indicate that Hersha insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Hersha.

38.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| e of Beneficial Owner | Number of Company Common Shares and Company Partnership Units Beneficially Owned[1] | Percentage of Outstanding Company Common Shares[2] | Percentage of Outstanding Company Common Shares and Company Partnership Units[3] |
|---|---|---|---|
| *5% or more Shareholders* | | | |
| BlackRock Inc.[4] 50 Hudson Yards New York, NY 10001 | 2,924,638 | 7.3% | 6.1% |
| The Vanguard Group, Inc.[5] 100 Vanguard Blvd. Malvern, Pennsylvania 19355 | 2,802,068 | 7.0% | 5.8% |

| | | | |
|---|---|---|---|
| Beryl Capital Management LLC[6]<br>225 Avenue I, Suite 205<br>Redondo Beach, CA 90277 | 2,414,227 | 6.0% | 5.0% |
| Glazer Capital, LLC[7]<br>250 West 55th Street<br>Suite 30A<br>New York, New York 10019 | 2,028,117 | 5.1% | 4.2% |
| *Named Executive Officers and Trustees* | | | |
| Jay H. Shah[8] | 3,297,685 | 7.7% | 6.8% |
| Neil H. Shah[9] | 3,210,548 | 7.5% | 6.7% |
| Ashish R. Parikh | 1,106,674 | 2.7% | 2.3% |
| Michael R. Gillespie | 511,200 | 1.3% | 1.1% |
| David L. Desfor[10] | 58,676 | * | * |
| Jackson Hsieh | 166,815 | * | * |
| Thomas J. Hutchison | 194,084 | * | * |
| Donald J. Landry | 194,771 | * | * |
| Michael A. Leven | 148,054 | * | * |
| Dianna F. Morgan | 115,377 | * | * |
| John M. Sabin[11] | 125,254 | * | * |
| Hasu Shah[12] | 828,973 | 2.0% | 1.7% |
| **l trustees and current executive officers as a group (11 persons)** | 9,129,138 | 19.5% | 19.0% |

\*   Denotes less than 1.0%.

39.   Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

| Name | Number of Shares Subject to Company Restricted Share Awards (#) | Value of Company Restricted Share Awards ($)[1] | Number of Company LTIP Units (#) | Value of Company LTIP Units ($)[1] | Number of Company Common Shares (#) | Value of Company Common Shares ($)[1] | Number of Company Partnership Units (#) | Value of Company Partnership Units ($)[1] | Number of Company Preferred Shares (#) | Value of Company Preferred Shares ($)[2] |
|---|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | | | | |
| David L. Desfor | — | $— | — | $— | 5,700 | $57,000 | 52,976 | $529,760 | — | $— |

| Michael R. Gillespie | — | $— | 511,200 | $5,112,000 | — | $— | — | $— | — | $— |
|---|---|---|---|---|---|---|---|---|---|---|
| Ashish R. Parikh | — | $— | 805,673 | $8,056,730 | 301,001 | $3,010,010 | — | $— | — | $— |
| Hasu P. Shah[3] | — | $— | 490,543 | $4,905,430 | 224,556 | $2,245,560 | 113,874 | $1,138,740 | 9,400 | $238,344 |
| Jay H. Shah | — | $— | 2,299,250 | $22,992,500 | 593,055 | $5,930,550 | 405,380 | $4,053,800 | 27,800 | $704,826 |
| Neil H. Shah | — | $— | 2,175,613 | $21,756,130 | 633,811 | $6,338,110 | 401,124 | $4,011,240 | 26,800 | $679,472 |
| **Non-Employee Trustees** | | | | | | | | | | |
| Jackson Hsieh | 18,026 | $180,260 | — | $— | 148,789 | $1,487,891 | — | $— | — | $— |
| Thomas J. Hutchison III | 18,026 | $180,260 | — | $— | 176,058 | $1,760,580 | — | $— | — | $— |
| Donald J. Landry | 5,899 | $58,990 | — | $— | 188,872 | $1,888,720 | — | $— | 2,250 | $57,042 |
| Michael A. Leven | 11,963 | $119,630 | — | $— | 136,091 | $1,360,910 | — | $— | 45,000 | $1,140,844 |
| Dianna F. Morgan | 5,899 | $58,990 | — | $— | 109,478 | $1,094,780 | — | $— | — | $— |
| John M. Sabin | 5,899 | $58,990 | — | $— | 119,355 | $1,193,550 | — | $— | — | $— |

(1)   Dollar values are calculated based on the Merger Consideration and OP Merger Consideration of $10.00 per Company Common Share and Company Partnership Unit, as applicable.

(2)   Dollar values are calculated based on the Preferred Merger Consideration of $25.00 per Company Preferred Share plus accrued but unpaid dividends as of October 2, 2023.

(3)   Mr. Hasu P. Shah retired from his position as Chairman of the board as of January 1, 2023.

40.   Moreover, certain employment agreements with certain Hersha executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will entitle several trustees or officers millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

*Golden Parachute Compensation[1]*

| Name | Cash[2] ($) | Equity[3] ($) | Perquisites / Benefits[4] ($) | Total ($)[5] |
|---|---|---|---|---|
| Michael R. Gillespie | $1,387,000 | $5,752,050 | $40,087 | $7,179,137 |
| Ashish R. Parikh | $5,612,000 | $9,557,380 | $47,572 | $15,216,952 |
| Jay H. Shah | $9,717,500 | $25,359,575 | $3,352 | $35,080,427 |
| Neil H. Shah | $11,960,000 | $24,249,005 | $41,230 | $36,250,235 |

41.   The Proxy Statement fails to adequately disclose communications regarding post-transaction employment.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is

necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.    Thus, while the Proposed Transaction is not in the best interests of Hersha, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and trustees.

***The Materially Misleading and/or Incomplete Proxy Statement***

43.    On September 22 and October 3, 2023, the Hersha Board caused to be filed with the SEC materially misleading and incomplete proxy statements that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.    Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

a.  Adequate information as to powers the Transaction Committee had, including whether to veto the proposed transaction;

b.  Why the Transaction Committee did not take part in all of the negotiations for the Proposed Transaction with KSL, specifically employment negotiations;

c.  Adequate information about conflicts of interest between Defendant Hutchison, Transaction Committee Chair and KSL;

d.  Adequate rationale for the acceptance of KSL's offer, which was lower than Party A's offer, and why one month was too long to wait to accept Party A's higher offer;

e.  Whether the confidentiality agreements entered into by the Company with Parent Parties differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Parent Parties, would fall away; and

g.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Hersha's Financial Projections*

45.    The Proxy Statement fails to provide material information concerning financial projections for Hersha provided by Hersha management to the Hersha Board and Goldman Sachs and relied upon by Hersha in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

46.    Notably the Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed certain, "certain internal financial analyses for the Company prepared by its management, as approved for Goldman Sachs' use by the Transaction Committee…"

47.     The Proxy Statement should have, but fails to provide, certain information in the projections that Hersha management provided to the Board and Goldman Sachs.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

48.     With regards to the *Hersha Selected Management Projections for 2023 through 2028*, the Preliminary Proxy fails to disclose:

      a.  The inputs, metrics, and assumptions used to determine Gross Operating Profit, including total hotel revenue and hotel operating expenses;

      b.  The inputs, metrics, and assumptions used to determine Consolidated Adjusted Corporate EBITDA, including earnings before interest, taxes, depreciation and amortization; fixed charges (including property taxes, property insurance, base management fees and hotel ground rent) and corporate general and administrative expenses; insurance proceeds; other revenue; corporate property hotel operating expenses; corporate hotel ground rent; corporate property taxes and insurance; amortization of ground leases; net operating loss incurred on non-operating properties and real estate taxes; and

      c.  The inputs, metrics, and assumptions used to determine Unlevered Free Cash Flow, including net working capital, maintenance capital expenditures, project and lifecycle capital expenditures, and tax expense.

49.     The projections provided are inadequate and incomplete; the Proxy Statement fails to provide full disclosure of the management projections, and only includes a summary of "selected" projections.

50.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

52.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the financial analyses created by Hersha, or make an informed decision whether to vote his shares in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

54.     In the Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55.     For the *Hersha Stand-Alone Financial Analyses:*

a.  With regard to the *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose material items, including the following:

i.  The underlying inputs, metrics, and assumptions necessary to determine the discount range of 9.00% to 11.00% including the weighted average cost of capital;

ii.  The unlevered free cash flow utilized for the Company for the second half of 2023 through calendar year 2028;

iii.  The underlying inputs, metrics, and assumptions necessary to determine the range of illustrative terminal values for the Company, including 1-year forward EBITDA multiples ranging from 9.5x to 11.5x, to a 1-year forward estimate of the adjusted EBITDA to be generated by the Company in calendar year 2029;

iv.  The underlying inputs, metrics, and assumptions necessary to determine implied perpetuity growth rates ranging from 1.3% to 4.4%;

v.  The underlying inputs, metrics, and assumptions necessary to calculate after-tax unlevered free cash flow; and

vi.  The illustrative enterprise values for the Company calculated;

vii.  The Company's net debt utilized;

viii.  The range of illustrative equity values calculated for the Company; and

ix.  The number of fully-diluted shares utilized for the Company.

b.  With regard to the *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose material items, including the following:

i.   The implied enterprise value for the Company as of December 31 for each of the calendar years 2023 through 2025, and the underlying inputs, metrics, and assumptions used to determine it, including, the range of EV/NTM EBITDA multiples of 9.5x to 11.5x and estimates of the Company's NTM Adjusted EBITDA for each of the calendar years 2023 through 2025;

ii.   The Company's net debt for each of the calendar years 2023 to 2025 utilized;

iii.   The range of illustrative equity values as of December 31 for the Company for each of the calendar years 2023 to 2025 calculated, and the underlying inputs, metrics, and assumptions used to determine them, including the implied enterprise values;

iv.   The projected year-end number of fully diluted outstanding Company Common Shares each as of calendar years 2023 to 2025 utilized;

v.   The range of implied future values per Company Common Share calculated, and the underlying inputs, metrics, and assumptions used to determine them;

vi.   The cumulative dividends per Company Common Share expected to be paid to holders of Company Common Shares through the end of each of calendar years 2023 to 2025; and

vii.   The inputs, metrics, and assumptions used to determine the illustrative discount rate of 12.0%, including any estimates of the Company's cost of equity.

c. With regard to the *Premia Paid Analysis*, the Proxy Statement fails to disclose material items, including the following:

   i. The underlying metrics of the 23 observed transactions, including the names of the selected transactions;

   ii. The closing date for each of the selected transactions;

   iii. The closing share price of the selected transactions; and

   iv. The inputs, metrics, and assumptions used to determine the reference range of 16.5% to 28.7%.

d. With regard to the *Selected Publicly Traded Companies Trading Multiples*, the Proxy Statement fails to disclose material line items, including the following:

   i. The metrics for the selected companies;

   ii. For each of the selected companies, the EV/NTM EBITDA multiples for the one-month, six-month and one-year periods ended August 25, 2023, for the period since January 1, 2022 and for the period from August 25, 2015 through February 20, 2020; and

   iii. For the Company, the inputs and metrics used to determine the EV/NTM EBITDA multiples for the one-month, six-month and one-year periods ended August 25, 2023, for the period since January 1, 2022 and for the period from August 25, 2015 through February 20, 2020.

56. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

57.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinions and the Board's determination that the Proposed Transaction is in his best interests as a public Hersha stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any

proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

65.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Hersha's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of Hersha within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause Hersha to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Hersha and all of its employees.   As alleged above, Hersha is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise comply with the Exchange Act and disseminate a Proxy Statement that does not contain any untrue statements of material fact

and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: October 6, 2023                    **BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*